<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PARISH KING, | : | Civil Action No. 07-0878 (JLL) |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | <u>OPINION</u> |
| | : | |
| MICHAEL POWELL, et al., | : | |
| | : | |
| Respondents. | : | |
| | : | |

**APPEARANCES:**

> PARISH KING, #426565/0500837C
> South Woods State Prison
> 215 South Burlington Road
> Bridgeton, New Jersey  08302
> Petitioner <u>Pro</u> <u>Se</u>

> JOHN J. SCALITI, ASSISTANT PROSECUTOR
> BERGEN COUNTY PROSECUTOR
> Bergen County Justice Center
> Hackensack, New Jersey  07601

<u>**LINARES**</u>, <u>District Judge</u>

Parish King filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(a) challenging a conviction in the Superior Court of New Jersey.  Respondents filed an Answer, together with a copy of the state court record, arguing that the Petition should be dismissed on the merits.  Although Petitioner was granted an extension of the time to file a reply, he did not file a reply to the Answer.  For the reasons expressed below, this Court will dismiss the Petition on the merits with prejudice and deny a certificate of appealability.

## I.  BACKGROUND

Petitioner challenges a judgment of conviction filed in the Law Division of the Superior Court of New Jersey, Bergen County, on November 30, 2001, and amended April 3, 2003, after a jury found him guilty of first-degree attempted murder of his 10-year-old stepdaughter, second-degree aggravated assault of the stepdaughter, third-degree aggravated assault with a knife, two counts of third-degree aggravated assault by causing significant bodily injury to the stepdaughter and to Petitioner's wife Darlene, second-degree endangering the welfare of a child, and third-degree possession of a knife for an unlawful purpose.  See State v. King, Docket No. A-2342-01T4 slip op. at *1-2 (N.J. Super., App. Div., March 19, 2003).  The jury also found that Petitioner used a "deadly weapon" in connection with attempted murder and aggravated assault, making those convictions subject to the 85% parole ineligibility term of the No Early Release Act, see N.J. STAT. ANN. § 2C:43-7.2.  Id., at 2.

The criminal episode resulting in the convictions occurred on December 8, 2000, when Petitioner stabbed his stepdaughter 15 times and used force against his wife.  The Appellate Division described the facts as follows:

> At approximately 10:30 p.m., Darlene [Petitioner's wife] woke [Petitioner] to get ready for work at Shop Rite, where he worked a second job on the 11:00 p.m. shift.  Instead of preparing to go to work, however, [Petitioner] entered [his stepdaughter] J.M.'s bedroom and attacked her with a knife from a dry rack in the kitchen.  J.M., awoken by sharp pains through her body, turned around and in her well-lit room, saw and heard defendant attacking her.
>
> J.M.'s cries for help woke her mother who had fallen asleep in her own bedroom . . . .  As Darlene ran towards J.M.'s room, defendant intercepted her in the kitchen, where he punched her in the mouth so hard, she fell to the floor and "flipped over."  Darlene

2

quickly got up, ran to her bedroom, dialed 911, but threw the phone to the side of the bed so that [Petitioner], who had chased her, would not realize that she had summoned help.

[Petitioner], whose hands were covered with blood, grabbed Darlene, began choking her and wrestled her to the ground. When she tried to resist, [Petitioner] threatened, "Darlene, don't make me have to kill you." [Petitioner], at first losing his grip because of the blood on his hands, eventually was able to pull Darlene to her feet and pinned her against the wall with his left hand around her neck. In the struggle, [Petitioner] ripped off Darlene's top, a necklace, and two of her fingernails.

[Petitioner] returned to J.M.'s bedroom where, in the meantime, she had wrapped herself in a blanket . . . When [Petitioner] went to uncover her, J.M. again felt sharp pains going through her shoulders. J.M. deliberately stopped crying and held her breath "so that [Petitioner] would think [she] was dead . . ."

Englewood police officers Thomas Greeley and Moises Perez responded to the apartment on a "report of a 911 that was apparently left [off] the hook with arguing heard in the background." As they approached, they could hear yelling from a distance away that continued until they reached the front door. When they knocked on the door, [Petitioner] ordered Darlene to "shut up," but as soon as he opened the door, Darlene pushed past him and ran behind the officers. Noticing injuries to Darlene's face and hands as she continued to yell for help for J.M who remained in the rear bedroom, the officers placed [Petitioner] under arrest. [Petitioner] stated that he was sorry and offered no resistance.

Officer Greeley went to the bedroom and found J.M. in her bed "covered in blood." J.M. was shivering and whimpering. When asked what happened, J.M. replied that [Petitioner] "hurt me." Officer Greeley also secured a kitchen knife located at the foot of J.M.'s bed . . . .

[Petitioner] offered a completely different version of the incident at trial. According to [Petitioner], he was awakened that evening by J.M.'s screams. He ran to her room where he saw J.M. crying on the floor and Darlene standing over her by the doorway. When he asked what happened, Darlene told [Petitioner], "[t]his ain't

3

none of your f-ing business," then pushed by [Petitioner] and went into the living room.

[Petitioner] followed Darlene, asking her what was going on and why J.M. was crying. Darlene then lunged at him in the living room, forcing [Petitioner] to push her away, and causing her to fall into a table and her shirt to rip off . . . .

[Petitioner] returned to J.M.'s room to assist her. He picked her up from the floor and put her on the bed, explaining the blood all over his hands and chest. Darlene stormed in the room, saying "[y]ou'd better not touch my daughter," and informed [Petitioner] that she had phoned the police. [Petitioner] then restrained Darlene in the hallway by placing his hand on her chest until the police arrived.

State v. King, Docket No. A-2342-01T4 slip op. at *4-7.

The Law Division sentenced Petitioner to an aggregate term of imprisonment of 25 years, with 17 years of parole ineligibility pursuant to the No Early Release Act, and imposed fees and penalties. Id. at 2-3. Petitioner appealed, and on March 19, 2003, the Appellate Division of the Superior Court of New Jersey affirmed the conviction and sentence, except the court directed that the fees imposed on the convictions that were merged into the attempted murder conviction be vacated. Id. at 20. The Law Division entered an amended judgment on April 3, 2003. On July 14, 2003, the New Jersey Supreme Court denied certification. See State v. King, 177 N.J. 492 (2003) (table).

On or about January 20, 2004, Petitioner filed a petition for post-conviction relief in the Law Division of the Superior Court of New Jersey. See State v. King, Docket No. A-4794-04T4 slip op. at *4 (N.J. Super., App. Div., June 29, 2006). The Law Division denied post-conviction relief by order entered March 7, 2005. Id. at 1. Petitioner appealed, and on June 29, 2006, the Appellate Division affirmed the order denying post-conviction relief. Id. On November 15,

4

2006, the New Jersey Supreme Court denied certification. See State v. King, 188 N.J. 577

(2006) (table).

Petitioner executed the § 2254 Petition presently before this Court on February 15, 2007.

The Clerk received it on February 23, 2007. This Court notified Petitioner of the consequences

of filing a § 2254 petition and gave him an opportunity to amend the petition, pursuant to Mason

v. Myers, 208 F.3d 414 (3d Cir. 2000). Petitioner indicated that he would like this Court to rule

on the Petition "as is." The Petition presents the following grounds:

> Ground One: PETITIONER 6TH AMEND. RIGHT TO A FAIR
> TRIAL WAS VIOLATED DUE TO TRIAL COURT'S FAILURE
> TO SEVER 3 UNRELATED CHARGES. (SEE POINT TWO IN
> PCR BRIEF BY THEODORE SLIWINSKI. PETITIONER ALSO
> RAISED INEFFECTIVE ASSISTANCE OF COUNSEL (SEE
> POINT THREE IN SAME PCR BRIEF).
>
> Supporting FACTS: Rely on facts in PCR Brief mentioned above.
>
> Ground Two: TRIAL COUNSEL WAS INEFFECTIVE FOR
> FAILURE TO ADEQUATELY PREPARE FOR TRIAL AND
> FAILED TO PROVIDE DISCOVERY TO PETITIONER AND
> ALSO . . . (SEE POINT THREE SUB.TOPIC B IN PCR BRIEF
> BY THEODORE SLIWINSKI.
>
> Supporting FACTS: Petitioner rely on the facts in brief.
>
> Ground Three: TRIAL COUNSEL WAS INEFFECTIVE
> BECAUSE HE FAILED TO HAVE THE KNIFE TESTED FOR
> FINGERPRINTS OR LAB PRINT. (SEE POINT THREE SUB.
> TOPIC C IN PCR BRIEF BY THEODORE SLIWINSKI).
>
> Supporting FACTS: Petitioner rely on the facts in brief.
>
> Ground Four: TRIAL COUNSEL WAS INEFFECTIVE
> BECAUSE HE CONCEDED PETITIONER'S GUILT AT TRIAL.
> (SEE POINT FOUR IN PCR BRIEF BY THEODORE
> SLIWINSKI).

Supporting FACTS: Petitioner rely on the facts in brief.

Ground Five: THE IMPOSITION OF A TWENTY-YEAR PRISON TERM ON COUNT ONE IN THE INDICTMENT WAS CONTRARY TO BLAKELY V. WASHINGTON AND VIOLATING PETITIONER'S 6TH AMENDMENT RIGHT TO TRIAL BY JURY, AND 14TH AMENDMENT RIGHT TO DUE PROCESS.

Supporting FACTS: See Point one in defendant's Pro se Supplemental Brief for Post Conviction Relief.

Ground Six: PETITIONER'S 4TH AND 14TH AMENDMENT RIGHTS WERE VIOLATED BECAUSE THE COMPLAINT WAS NOT TAKEN UNDER OATH BEFORE A NEUTRAL AND DETACHED JUDICIAL OFFICER.

Supporting FACTS: See point two in defendant's Pro se Supplemental Brief for Post Conviction Relief).

(Pet. ¶12.A. - 12.F.)

On July 23, 2007, Respondents filed an Answer and the state court record, seeking dismissal of the Petition on the merits. Although given an opportunity to do so, Petitioner did not file a reply to the answer.

## II. STANDARD OF REVIEW

A habeas corpus petition must meet "heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254 Rule 2(c)). The petition must specify all the grounds for relief available to the petitioner, state the facts supporting each ground, and state the relief requested. See 28 U.S.C. § 2254 Rule 2(c)(1), (c)(2), (c)(3).

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas
> corpus in behalf of a person in custody pursuant to the judgment of
> a State court only on the ground that he is in custody in violation of
> the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction

violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S.

62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d

152, 159 (3d Cir. 1997). "Federal courts hold no supervisory authority over state judicial

proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v.

Phillips, 455 U.S. 209, 221 (1982). "If a state prisoner alleges no deprivation of a federal right, §

2254 is simply inapplicable." Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982). Moreover, "a state

court's interpretation of state law, including one announced on direct appeal of the challenged

conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76

(2005).

In reviewing a § 2254 petition, a federal court is not permitted to address a federal

constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a

ground for relief.[1]  Nor may the Court recharacterize a ground asserted under state law into a

---

[1] See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without satisfying Miranda, the district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the Miranda warnings to be involuntary under due process criteria"); Baker v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition contains ground asserting the ineffective assistance of counsel during plea negotiations and trial, court is not permitted to consider ground, evident from the facts but not raised in the petition, that appellate counsel was ineffective by failing to advise petitioner that he faced a longer sentence by appealing the conviction).

federal constitutional claim.[2]  "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). Moreover, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citations and internal quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

The AEDPA limits a federal court's authority to grant habeas relief when a state court has adjudicated Petitioner's federal claim on the merits.  See 28 U.S.C. § 2254(d).  Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless adjudication of the claim either involved an unreasonable application of clearly established federal law, or was based on unreasonable determination of the facts in light of the evidence before the state court.  See 28 U.S.C. § 2254(d).  Specifically, § 2254(d) provides:

> (d) An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[2] See Engle, 456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable; Kontakis v. Beyer, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights).

28 U.S.C. § 2254(d).

The unreasonableness standards of § 2254(d) govern only claims that were "adjudicated on the merits in State Court proceedings." 28 U.S.C. § 2254(d). "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (citations and internal quotation marks omitted), reversed on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005); see also Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006) ("Here, because the PCRA appellate court found that Vargas was not willing to testify at the guilt phase of Rolan's trial, its decision to deny habeas relief on that basis constituted an adjudication on the merits"). A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever. See Rompilla, 355 F.3d at 247. On the other hand, "[i]f the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply, and federal courts undertake a de novo review of the claim." Rolan, 445 F.3d at 678.

As the New Jersey courts adjudicated Petitioner's claims on the merits, this Court may not grant relief unless either § 2254(d)(1) or § 2254(d)(2) is satisfied. See 28 U.S.C. § 2254(d). Accordingly, this Court may not grant habeas relief to Petitioner unless the adjudication of a federal claim by the New Jersey courts involved an unreasonable application of clearly established Supreme Court law, see 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding and Petitioner is in custody in violation of the Constitution or laws or treaties of the United States,

9

see 28 U.S.C. § 2254(a), (d)(2).  A court begins the analysis under § 2254(d)(1) by determining

the relevant law clearly established by the Supreme Court.  See Yarborough v. Alvarado, 541

U.S. 652, 660 (2004).  Clearly established law "refers to the holdings, as opposed to the dicta, of

[the Supreme Court's] decisions as of the time of the relevant state-court decision."  Williams,

529 U.S. at 412; see also Carey v. Musladin, 127 S. Ct. 649, 653 (2006) ("federal habeas relief

may be granted here if the California Court of Appeal's decision was contrary to or involved an

unreasonable application of this Court's applicable holdings").  A court must look for "the

governing legal principle or principles set forth by the Supreme Court at the time the state court

renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the

state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it

"confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme]

Court and nevertheless arrives at a [different] result."  Williams v. Taylor, 529 U.S. 362, 405-06

(2000).  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may

grant the writ if the state court identifies the correct governing legal principle from th[e Supreme]

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

Williams, 529 U.S. at 413.  For example, in Carey v. Musladin, the Court reversed the granting

of a writ, holding that where "[n]o holding of this Court required the California Court of Appeal

to apply the test of Williams and Flynn to the spectators' conduct . . . , the state court's decision

was not contrary to or an unreasonable application of clearly established federal law."  Carey,

127 S. Ct. at 654.[3]  In addition, whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.[4]  Id. at 409-10; see also Thomas v. Varner, 428 F.3d 491, 497 (3d Cir. 2005). Thus, "[t]he federal *habeas* court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Outten v. Kearney, 464 F.3d 401, 414 (3d Cir. 2006) (citation and internal quotation marks omitted).

### III. DISCUSSION

A.  Joinder/Severance

In Ground One, Petitioner asserts that the Law Division violated his constitutional rights by failing to sua sponte sever the charge for the unlawful criminal restraint of Darlene, which occurred on November 18, 2000, and the charge of threatening to kill Darlene, which occurred on October 29, 1999, from the charges arising from the December 8, 2000, incident.  Petitioner argues that the incidents were not related and that the joinder prejudiced Petitioner because it permitted the prosecutor to argue that Petitioner was a bad person.  Petitioner also contends that his trial counsel was ineffective in failing to move for severance in a timely manner.

---

[3] See also Wright v. Van Patten, 128 S. Ct. 743, 747 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law") (citation and internal quotation marks omitted).

[4] "[D]ecisions of federal courts below the level of the United States Supreme Court may be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as helpful amplifications of that precedent." Marshall v. Hendricks, 307 F.3d 36, 71 n.24 (3d Cir. 2002) (citations and internal quotation marks omitted).

Respondents argue that Ground One raises only a question of state evidentiary law and does not assert a constitutional claim. In addition, Respondents contend that, to the extent Ground One asserts a constitutional claim, Petitioner is not entitled to habeas relief because the state courts did not unreasonably apply Supreme Court precedent.

Petitioner raised this claim on direct appeal to the Appellate Division in his pro se brief. The Appellate Division rejected the claim as follows:

> As to the court's failure to sever the two counts of the indictment charging "other crimes," suffice it to say, defendant never made a timely motion, R. 3:10-2, raising it instead only moments before jury selection. In any event, even if the charges were tried separately, evidence of the offenses sought to be severed would be admissible in the trial of the remaining counts under N.J.R.E. 404(b) to prove, among other things, motive and intent . . . . Defendant's prior conduct toward his wife Darlene was relevant to establish his motive and intent in harming both Darlene and her daughter J.M. on the occasion in question. It was the State's theory that defendant was extremely jealous of his wife and it was this strong emotion that triggered the attack on December 8, 2000 against both victims. Moreover, the incidents were sufficiently close in time to warrant their admissibility . . . , and enjoy a "nexus" with the attempted murder to warrant joinder . . . . There being no "clear showing of a mistaken exercise of discretion," we will not disturb the trial court's decision to deny defendant's much belated severance motion.

State v. King, Docket No. A-2342-01T4 slip op. at *16-17.

This Court agrees with Respondents that the severance issue does not rise to the level of a constitutional claim. "[J]oinder of offenses has long been recognized as a constitutionally acceptable accommodation of the defendant's right to a fair trial." Herring v. Meachum, 11 F.3d 374, (2nd Cir. 1993); see also United States v. Lane, 474 U.S. 438, 446 n.8 (1986); United States ex rel. Laws v. Yeager, 448 F.2d 74, 82 (3d Cir. 1971); United States ex rel. Evans v. Follette,

364 F.2d 305 (2nd Cir. 1966).  Because the failure to sever offenses, all of which related to

Petitioner's wife and stepdaughter, is governed by state law, and Petitioner has not shown that

the state courts' adjudication of his severance claim was contrary to, or an unreasonable

application of, Supreme Court precedent, he is not entitled to habeas relief on Ground One.

B.  Complaint Was Not Taken by Judicial Officer

     In Ground Six, Petitioner asserts that the complaint/arrest warrant was issued by Sgt.

Hayes, rather than by a neutral and detached judicial officer, in violation of his Fourth and

Fourteenth Amendment rights.  Respondents argue that the claim does not warrant habeas relief

because the manner in which a defendant is brought to trial does not affect the government's

ability to try him or her.

     This Court agrees with Respondents.  "An illegal arrest, without more, has never been

viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction."  United States

v. Crews, 445 U.S. 463, 474 (1980); see also Gerstein v. Pugh, 420 U.S. 103, 119 (1975) ("Nor

do we retreat from the established rule that illegal arrest or detention does not void a subsequent

conviction . . . . [A]lthough a suspect who is presently detained may challenge the probable cause

for that confinement, a conviction will not be vacated on the ground that the defendant was

detained pending trial without a determination of probable cause").  Petitioner is not entitled to

habeas relief on Ground Six because the state courts' adjudication of the claim was not contrary

to, or an unreasonable application of, clearly established Supreme Court precedent.

C.  Blakely Claim

     Petitioner asserts in Ground Five that his term of imprisonment violates the Sixth

Amendment under Blakely v. Washington, 542 U.S. 296 (2004), because the trial court increased

the sentence based on facts not found by a jury beyond a reasonable doubt or admitted by

Petitioner.  However, Petitioner is not entitled to habeas relief on Ground Five because <u>Blakely</u>

does not apply retroactively to cases that became final on direct review prior to June 24, 2004.

      The Supreme Court's 2004 ruling in <u>Blakely</u> evolved from <u>Apprendi v. New Jersey</u>, 530

U.S. 466 (2000).  In <u>Apprendi</u>, the Supreme Court determined that Apprendi had a constitutional

right to have a jury, rather than a judge, find bias because the finding was necessary to support an

enhanced sentence under the New Jersey hate crimes law.  The Supreme Court reversed

Apprendi's sentence pursuant to the principle that, "under the Due Process Clause of the Fifth

Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other

than prior conviction) that increases the maximum penalty for a crime must be charged in an

indictment, submitted to a jury, and proven beyond a reasonable doubt." <u>Apprendi</u>, 530 U.S. at

476 (quoting <u>Jones</u>, 526 U.S. at 243 n.6).  In 2002, the Supreme Court held in <u>Ring v. Arizona</u>,

536 U.S. 584 (2002), that imposition of the death penalty under Arizona law violated <u>Apprendi</u>

because the trial judge determined the presence or absence of aggravating factors required by

Arizona law for imposition of the death penalty. <u>Ring</u>, 536 U.S. at 602.  On June 24, 2004, the

<u>Blakely</u> Court determined that application of Washington's sentencing guidelines violated the

defendant's rights under <u>Apprendi</u>.  The <u>Blakely</u> Court announced that "the 'statutory maximum'

for <u>Apprendi</u> purposes is the maximum sentence a judge may impose *solely on the basis of the*

*facts reflected in the jury verdict or admitted by the defendant.*" <u>Blakely</u>, 124 S.Ct. at 2537

(emphasis in original) (citations omitted).  In 2005, the Supreme Court determined in <u>United</u>

<u>States v. Booker</u>, 543 U.S. 220 (2005), that application of the Federal Sentencing Guidelines

violates the Sixth Amendment because the guidelines require the judge to enhance the sentence

based on the judge's determination of facts that were not found by the jury or admitted by defendant.

As a matter of federal constitutional law, "a new rule for the conduct of criminal prosecutions is to be applied . . . to all cases . . . pending on direct appeal or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." Griffith v. Kentucky, 479 U.S. 314, 328 (1987). The Supreme Court emphasized in United States v. Booker, 543 U.S. at 268, that its Sixth Amendment holding regarding the Sentencing Guidelines must be applied to all cases on direct review as of the date of its Booker decision (not the date of its Apprendi decision). Accord Schriro v. Summerlin, 542 U.S. 348, 351 (2004) ("When a decision of this Court results in a 'new rule,' that rule applies to all criminal cases still pending on direct review . . . . As to convictions that are already final, however, the rule applies only in limited circumstances"). Ordinarily, "State convictions are final 'for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied.'" Beard v. Banks, 542 U.S. 406, 411 (2004) (quoting Caspari v. Bohlen, 510 U.S. 383, 390 (1994)).

The Supreme Court's ruling in Blakely does not apply to Petitioner's case as a matter of federal constitutional law because the decision was issued on June 24, 2004, after Petitioner's conviction had become final on October 13, 2003, 90-days after the New Jersey Supreme Court denied certification on direct appeal. See Schriro v. Summerlin, 542 U.S. 348, 353 (2004) (because Ring v. Arizona "altered the range of permissible methods for determining whether a defendant's conduct is punishable by death, requiring that a jury rather than a judge find the

15

essential facts bearing on punishment," it was a "prototypical procedural rule" that did not apply retroactively to cases already final on direct review); Warren v. Kyler, 422 F.3d 132 (3d Cir. 2005) (Booker line of cases is not applicable retroactively to cases on collateral review under § 2254); Lloyd v. United States, 407 F.3d 608 (3d Cir. 2005) (Booker, which applied the Blakely rule to the federal sentencing guidelines, is not retroactively applicable to cases on collateral review). Because Blakely does not apply retroactively to this case, the New Jersey courts' denial of Petitioner's Blakely claim was not contrary to, or an unreasonable application of, Supreme Court precedent.

D.  Ineffective Assistance of Counsel

In Grounds Two, Three and Four, Petitioner claims that trial counsel was constitutionally ineffective in (1) failing to adequately prepare for trial and to provide discovery to Petitioner until two weeks prior to trial, (2) failing to have the knife tested for fingerprints, and (3) conceding Petitioner's guilt in summation. As to preparation and discovery, Petitioner argues that trial counsel "simply did not spend enough time to prepare his case" and that Petitioner "received a copy of the discovery only two weeks before the trial." (Letter Brief of Theodore Sliwinski, dated Jan. 2, 2005, at 8.) Petitioner further argues, without elaboration, that trial counsel was deficient in failing to have the knife tested for fingerprints and blood, and failing to have the blood at the crime scene tested. (Id. at 9-10.) Finally, Petitioner argues that trial counsel "conceded" Petitioner's guilt during summation when he stated that "the man before you on trial was not intending to commit murder that night, he had no intention - he got up out of bed to go to work to his second job after his wife coaxed him, come on, go to work, you can sleep tomorrow.

That between the time that he got up and the time that he went inside to get dressed or to get ready to go to work, he didn't decide that he was going to kill Jasmin." (Id., p. 10.)

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. See Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. See Strickland, 466 U.S. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. Id. In assessing counsel's duty to investigate, the Court explained

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

17

Strickland, 466 U.S. at 690-91.

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.  As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

Strickland, 466 U.S. at 695-696.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

In this case, Petitioner presented his ineffective assistance of counsel claims to the New Jersey courts in his petition for post-conviction relief.  The Law Division rejected the claims without an evidentiary hearing.  The Appellate Division concluded that Petitioner failed to establish a prima facie case because he made no more than bald assertions:

18

To establish a prima facie claim of ineffective assistance of counsel, a defendant "must do more than make bald assertions that he was denied the effective assistance of counsel. He must allege facts sufficient to demonstrate counsel's alleged substandard performance." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div.), certif. denied, 162 N.J. 199 (1999). We have reviewed the record in light of defendant's contentions and applicable law. Defendant's contentions are little more than unsupported allegations. We are satisfied that . . . counsel's performance was not perfunctory. His lack of effectiveness arose from the lack of merit in defendant's claims. . . .

In addressing defendant's argument [that counsel conceded guilt], Judge Venezia stated:

> I do not agree with counsel. I do not read those comments as he reads them to be. It [is] an interesting assessment[,] but not one that I agree with because, very frankly, I tried this case as I said before. I remember how Mr. Meehan approached this case, and the theory of the State's case was based on the [identification] made by the little girl . . . . The mother was in the house at the time. [Defendant] had an absolute denial of this circumstance, indicated he just did not do the event. That is what []his defense was, and that is the defense that Mr. Meehan proffered at trial . . . .

> I know what the summation was. Taking that one portion out of context, very frankly, and trying to stress the fact that Mr. Meehan decides after trying the case for two weeks, well, you know what, I [am] just going to get up in my summation and admit that my client did the act, ladies and gentlemen, have a good day, is ludicrous again with a capital L . . .

We find no merit in defendant's claim . . . . We are also in complete agreement with Judge Venezia's evaluation of defendant's argument on this issue. Defendant denied his guilt at trial, but the jury did not believe him. The additional allegations of ineffective assistance . . . suffered from the same deficiencies as the claims when presented by PCR counsel to Judge Venezia, and are unsupported and insufficient to raise a prima facie showing that defendant was denied the effective assistance of counsel. They are without merit.

19

State v. King, Docket No. A-4794-04T4 slip op. at *7-11 (N.J. Super. App. Div. June 29, 2006).

Although the Appellate Division did not specifically discuss Petitioner's contention that

counsel was ineffective in failing to have the knife tested for fingerprints, Judge Venezia

expressly rejected this claim as follows:

> So I need to determine whether the conduct of Mr. Meehan in representing this defendant at trial creates a prima facie showing of ineffective assistance of counsel. Looking at the case as a whole and even taking into consideration all of the arguments, including that of the knife - and I do have the information that indicates that fingerprints on the knife wouldn't have been probative because, very frankly, it was a knife as the State proffered that came from the house, not from the outside. To argue that lack of fingerprints on that knife resulted in Mr. King's conviction is absolutely ludicrous with a capital L . . . . There's nothing to show in this case, and I did this case, so I know it well, based on the facts that there was anything probative about getting fingerprints off a knife .
> . . .

State v. King, Ind. No. 01-02-0394 transcript of motion, at *19-20 (N.J. Super. Law Div. March

3, 2005).

This Court finds that the rejection of Petitioner's ineffective assistance of counsel claims

by the New Jersey courts was not contrary to, or an unreasonable application of Strickland. The

New Jersey courts' rejection of Ground Two (failure to adequately prepare for trial and provide

discovery to Petitioner prior to two weeks before trial) as an unsupported contention is not

contrary to, or an unreasonable application of Strickland and its progeny. See Mayberry v.

Petsock, 821 F.2d 179, 185 (3d Cir. 1987) ("bald assertions and conclusory allegations do not

afford a sufficient ground for an evidentiary hearing" on an ineffective assistance claim).

Similarly, the New Jersey courts' rejection of Ground Three (failure to have the knife tested) was

not contrary to, or an unreasonable application of Strickland, particularly where defense counsel

chose instead to argue that the state's proofs were deficient in failing to test the knife for

fingerprints.  See Campbell v. Burris, 515 F.3d 172, 186 (3d Cir. 2008) (where petitioner did not

allege what information forensic testing would have produced that would have been helpful to

him, he did not show prejudice).

Finally, the New Jersey courts rejected Ground Four (counsel was constitutionally

ineffective in that his summation constituted an admission of guilt) based on the finding that

counsel's summation did not constitute an admission of guilt, but a suggestion that, given the

overwhelming evidence against Petitioner, the jury could convict Petitioner of a lesser-included

offense even if it rejected his testimony.  This Court holds that the New Jersey courts'

adjudication of Ground Four was not contrary to, or an unreasonable application of Strickland.

Cf. Florida v. Nixon, 543 U.S. 175 (2004) (holding that counsel's strategic decision, made

without the defendant's express consent, to concede, in his opening statement at guilt phase of

capital murder trial, the defendant's commission of murder, and to concentrate the defense on

establishing, at the penalty phase, cause for sparing defendant's life, is not per se prejudicial

ineffective assistance of counsel).  Based on the foregoing, Petitioner is not entitled to habeas

relief on Grounds Two, Three or Four.

E.  Certificate of Appealability

The AEDPA provides that an appeal may not be taken to the court of appeals from a final

order in a § 2254 proceeding unless a judge issues a certificate of appealability on the ground that

"the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.

§ 2253(c)(2).  The Court denies a certificate of appealability pursuant to 28 U.S.C. § 2253(c)

because the applicant has not made a substantial showing of the denial of a constitutional right.

See Miller-El v. Cockrell, 537 U.S. 322 (2003).

### III.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition for a Writ of Habeas Corpus

with prejudice and denies a certificate of appealability.


JOSE L. LINARES, U.S.D.J.

DATED: _____ 4 - 15 , 2008

22